The issue presented is whether the trial judge erred in refusing to consider plaintiffs pretrial motion for an order specifying it need not prove exclusive use at trial to succeed on the merits. The trial judge viewed that motion as beyond her purview and referred it here. For the reasons discussed herein, we take no position on the merits of plaintiffs motion, but do reverse and hold that the motion was properly before the trial judge. The matter is therefore remanded in accordance with the procedure discussed here.
Section 2(a) of the Act of May 15,1978, Pub.L. No. 95-280, 92 Stat. 44 (Act), conferred jurisdiction upon the court to render judgment on any claims of the Zuni Indian Tribe of New Mexico against the United States "with respect to any lands or interests therein in the State of New Mexico or the State of Arizona held by aboriginal title or otherwise which were acquired from the tribe without payment of adequate compensation by the United States.” Absent this Act, plaintiff Zuni Tribe’s petition would have been time barred. In its petition the Zuni Tribe claimed substantial tracts of land by aboriginal title that the Indian Claims Commission had already adjudged as belonging to the Navajo Tribe.
On September 17,1979, defendant United States Government moved to consolidate this case with the aboriginal claims of the Navajo Tribe. On January 25,1980, this court denied defendant’s motion to consolidate. Navajo Tribe v. United States, No. 229 and the Zuni Indian Tribe of New Mexico v. United States, No. 161-79L, 222 Ct.Cl. 584 (1980). The government had argued that consolidation was proper because aboriginal title requires a finding of exclusive use *846 and occupancy of definite lands. E.g., United States v. Santa Fe Pacific Railroad Co., 314 U.S. 339, 345 (1941). The government contended that the two overlapping claims of the Navajo and Zuni Tribes should be consolidated and tried in one action. Although the court did not directly weigh the general requirement of exclusivity, it found that the clear statutory language mandated the denial of the consolidation request. Under § 2(b)(1) of the Act, any award made to any Indian Tribe other than the Zuni Tribe with respect to any lands subject to a claim by the Zuni Tribe "shall not be considered as a defense, estoppel, or setoff to such claim, and shall not otherwise affect the entitlement to, or amount of, any relief with respect to such claim.” Also, § 2(b)(2) provided that any award made to the Zuni Tribe could not be used as a defense, estoppel or setoff to the claims of the Navajo Tribe in docket No. 229. This court then held it was clear that Congress plainly prohibited what the government was attempting to accomplish under the guise of its consolidation motion.
On June 10, 1981, plaintiff filed a motion before the trial judge seeking an order declaring that to recover plaintiff need not prove at trial that it had "exclusive use or occupancy” of the lands in issue. The trial judge thought that it was possible, but not certain, that this court’s earlier order denying consolidation resolved the issue of exclusivity in plaintiffs favor. The trial judge alternatively thought it possible that in its earlier order the court might have focused only on the impact of consolidation on the Navajo Tribe and thus the earlier order might not be dispositive. The trial judge then went on to view the case of Northern Helex Co. v. United States, 225 Ct.Cl. 194, 634 F.2d 557 (1980), as "advis[ing] trial judges that, when doubt exists as to the scope of issues to be tried on remand, clarification should be sought from the court, rather than be resolved by the trial judge.” Trial Judge Yannello’s Order of June 2, 1981. Because the trial judge had such doubts, she dismissed the motion as beyond her purview and held that this matter should have been brought to this court instead of the trial judge. Her holding forestalled any response by defendant and we have had to wait for it here.
*847 As a practical matter, she has prolonged the uncertainty of the parties as to what they are to prove, though trial is scheduled to start in October. We disagree with the handling of the motion for a number of other reasons. This court is unique among federal courts in its organizational structure and rules. In construing our rules to promote the most efficient and practical interrelationship between the trial and appellate divisions, we are governed by experience and prudential concerns. Our rules grant a great amount of discretion to trial judges in conducting pretrial proceedings. See Rules 111-114. Specifically, the trial judge may "take such action in preparation * * * for trial as may aid in the disposition of the cause * * Rule 111(a). Clearly, under this rule, a pretrial determination of the standard of proof required for recovery would initially fall within the purview of the trial judge.
We lack the background in the case that the trial judge had and has. The question of exclusivity is not one to be decided as an abstract proposition, by a tribunal not well informed of the background history and the conduct of the parties hitherto. It well may be it should not be decided at all before all the relevant facts are known. It would be most unwise for this court to rule on the merits of plaintiffs motion with the half light we now possess. In opposition to plaintiffs motion, defendant has raised the argument here that it had reasonably assumed from plaintiffs conduct that "exclusive use and occupancy” of the area was an essential element of proof in plaintiffs claim. Since the filing of plaintiffs original petition 2 years ago, defendant asserts that a pretrial conference has been held, expert witnesses hired, documents exchanged, and innumerable communications have occurred between the parties. The trial judge, of course, was there. She is in the most advantageous position to evaluate defendant’s contentions since she has conducted and monitored all pretrial proceedings to date. This court, on the other hand, did not have the same opportunity to experience firsthand the conduct of pretrial proceedings. We need the benefit of the trial judge’s knowledge of the case and awareness of what has gone before. Therefore, under the rules of this court and considering delegation of functions from this court to the trial *848 division, the trial judge was in error in holding that plaintiffs motion was beyond her purview, but even if she was right we call on her for her help.
Evidently the trial judge placed heavy weight on her reading of Northern Helex, supra. Her reading, in fact, is erroneous. The trial judge evidently viewed that case as requiring trial judges to seek clarification whenever there is doubt as to how to construe an interlocutory decision of this court. Such a view would result in untold delay and inefficiency and does not follow at all from the Northern Helex decision. That reading would be in direct conflict with ”the policy of the court * * * that proceedings before trial judges * * * not be interrupted by appeals to the court for piecemeal determinations, * * *.” Rule 53(c)(2)(ii). Northern Helex merely dealt with the very rare situation in which a trial judge "made no attempt to comply with our explicit instructions for computing damages. Instead, * * * returned to the theory of damages that we rejected * * * [earlier].” Northern Helex Co. v. United States, 225 Ct.Cl. at 197, 634 F.2d at 559. [Footnote omitted.] Northern Helex cannot be read as reducing the discretion of trial judges and compelling them to run to this court any time there is a legal issue in doubt. Instead, the case merely affirmed a fundamental principle that should have required no affir-mance, "that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid to rest.” 225 Ct.Cl. at 197, 634 F.2d at 560.
There is the language in Northern Helex that states, "if the trial judge had any doubt about what Northern Helex II held or required him to do on the remand, he could have requested further guidance from the court.” 225 Ct.Cl. at 199, 634 F.2d at 561. But the context is entirely unlike the problem here. That passage referred to supposed inconsistencies between Northern Helex I and II — the ostensible justification used by th,e trial judge in justifying his action in Northern Helex II. The order here involved does not directly pass on the exclusive use issue at all. The order may be, and no doubt is, suggestive, but we see no real ambiguity in its application to the case at bar. That *849 application requires an informed judgment about the case, more than another look at the mind of the panel.
The passage in Northern Helex does not suggest that a trial judge cannot interpret and apply rulings of this court. In fact, one of the functions of a remand is for the trial judge to apply the rulings of the court in light of facts found. In the instant case, the trial judge had three options. She could have granted plaintiffs motion by stating that proof of exclusive use at trial would not be required for recovery; she could have denied the motion and announced exclusive use would be required; or she could have decided she would take proof as offered by the parties, de bene if one likes, and reserve announcement of the appropriate "use” standard for her recommended decision. Interlocutory review of such an order might have been available if the requirements of Rule 53(c) were met.
This case has already undergone delay; the further time required for an initial determination on the use standard and then interlocutory review would now unduly delay proceedings. Therefore, since a decision is forced upon us, this court orders the trial judge to utilize the third option described above. The trial judge shall take proof and make proposed findings of fact and conclusions of law under the standard she determines to be proper, but be sure the record includes whatever competent evidence the parties proffer under all standards. Upon ultimate review, this court will have sufficient facts before it so a further remand will not be necessary should we disagree with the theory employed by the trial judge. Although this approach may lengthen the trial, it will probably not do so by much since the parties would take up the time with offers of proof, etc., anyway. The receipt of evidence by trial judges and even their making of findings, on theories they themselves reject, is far from unheard of in our jurisprudence. As a recent example, cf. the findings of Trial Judge Harkins in Everett Plywood Co. v. United States, 227 Ct.Cl. 415, 651 F.2d 723 (1981).
Wherefore, the denial of plaintiffs motion by the trial judge is vacated and the trial judge is instructed to take proof in accordance with the instructions contained in this opinion.